## STONE v. CHESHIRE RAILROAD CORPORATION.

A railroad corporation made a contract with certain persons that the latter
should build a certain portion of the railroad. While the contractors were at
work upon the road, in pursuance of the contract, some rocks were blasted
and a stone was thrown upon the plaintiff, causing him serious injury. *Held*,
that the plaintiff might maintain an action against the corporation to recover
damages for the injury he had sustained.

CASE. The writ in this case contained two counts. The
first alleged that the plaintiff, on the 8th of November, 1847,
was travelling in a public highway in Marlborough, in this
county, and that the defendants in blasting rocks upon their
railroad, threw a stone upon the plaintiff, crushing his hand
and otherwise greatly injuring him. The other count al-
leged the injury to have been done by the agents and ser-
vants of the defendants.

The plaintiff introduced evidence tending to prove the
allegation set forth in his writ.

The defendants offered evidence to show that at the time
the accident happened, that part of the railroad where the
blasting was done, by which the injury was received, was
under contract to S. Dillon & Co.; that the contractors were
then at work in pursuance of the contract, and the injury
was done by them.

It appeared by the testimony of Lucien Tilton, that he

was chief engineer of the company at the time of the accident, and had been long before; that he had the general supervision of the work done upon the road; that he and the engineers under him laid out the work and saw that it was done according to the contract; and that if they found anything going wrong, they attended to it, and had it corrected.

It also appeared that Dillon & Co. went through with their work and were paid by the company therefor; the payment in full, however, was not made till after the commencement of this suit.

It appeared, also, that the company was incorporated by an act approved December 27, 1844, was duly organized under the act, and that the State had granted a lease to the said company, dated October 11, 1845.

On the part of the defendants, it was contended that upon the state of facts exhibited by them, the court should rule that the action was misconceived, so far as the parties were concerned, and that it should have been brought against the contractors and not against the company.

The court, however, declined so to rule, and instructed the jury that the action was properly brought against the company.

The jury having returned a verdict for the plaintiff, the defendants moved to set the same aside and for a new trial for supposed error in the foregoing ruling and decision of the court.

*Wheeler*, for the defendants.

The construction of the Cheshire Railroad on the ground where it has been built, was authorized by the legislature in the original charter of the company, and by the lease from the Governor. Although the safety of the travelling public might be endangered by the proximity of the railroad track to the public highway, the company could be only held responsible for carelessness or negligence. Having authority

to build the road, the company might either do the work directly by themselves and their servants, or they might contract with others to do it by the job or otherwise. In the former case, there could be no doubt of their liability in case of negligence. The liability of the master for the acts of his servant, is well established, and rests upon satisfactory grounds. He who employs another, retaining the control over him, with power to dismiss him, may well be held answerable to third persons for the acts of the servant in the course of his employment. But it is clear that a man is not responsible for every act which may in some contingency be for his benefit. The line of distinction must be drawn somewhere. We hold that the liability ceases when the reason upon which it rests ceases, viz., the control of the supposed principal over the workman. *Milligan* v. *Wedge,* 12 Ad. & Ell. 737. *Coleridge,* J., says : " The true test is to ascertain the relation between the party charged and the party actually doing the injury. Unless the relation of master and servant exist between them, the act of the one creates no liability in the other." Lord *Brougham* lays down the principle thus : " The rule of liability, and its reason, I take to be this. I am liable for what is done for me and under my orders, by the man I employ ; for I may turn him off from my employment when I please." *Duncan Apt.* v. *Findlater,* 6 Clark & Finnelly's Rep. 894. See also *Bluttenberger* v. *The Little Schuylkill Navigation Co. & a.,* 2 Miles' Rep. 309.

If this is the true rule, the defendants in this action are not liable. The work was under contract to C. Dillon & Co., and although not expressly stated in the case, it will not be denied that it was done by them in the ordinary way, that is, by employing laborers. C. Dillon & Co. were their employers, and were responsible for their acts. It is true that the engineer had power to interfere in certain cases ; but so long as the contractors fulfilled their stipulations, neither the defendants or the engineer had any control over

them.   The engineer stood in the relation of an umpire be-
tween the defendants and  contractors in certain contingen-
cies.    But in this case it does not appear that any act
had been done by the contractors which authorized an inter-
ference either by the defendants or the engineer.   Under the
agreement, the contractors must be considered as in posses-
sion of the track of the road.   They were tenants in pos-
session.

There are some authorities which tend to support the
ruling of the court in this case.   Among these the principal
are *Bush* v. *Steinman*, 1 Bos. & Full. 404 ; and *Lowell* v.
*The Boston and Lowell Railroad Co.*, 23 Pick. 24.   This
case does not seem to have been  much considered.   There
are a few later English cases which to some extent support
*Bush* v. *Steinman.*   By the cases, the liability of the em-
ployer is carried beyond the point where we have attempted
to draw the line of distinction.   But it is to be considered
that in almost all the subsequent English cases, *Bush* v.
*Steinman* is qualified or doubted, and the principle upon
which it rests has been overruled.   In *Duncan* v. *Findlater*,
it is spoken of with very little respect both by Lord Ch. *Cot-
tenham* and Lord *Brougham.*   In that case the liability of
the employers was fully considered.   *Bush* v. *Steinman* is
also doubted in *Laugher* v. *Pointer*, 5 Barnwell & Cress-
well, 547, and a distinction is finally made between real and
personal property.   The marginal note is :  " Where the
owner of a carriage hired of a stable keeper a pair of horses
to draw it for a day, and the owner of the horses provided a
driver, through whose negligent driving an injury was done
to a horse belonging to a third person, held by *Abbott*, C. J.,
and *Littledale*, J., that the owner of the carriage was not
liable to be sued for such injury.  *Bayley* and *Holroyd*, J. J.,
dissenting."   The case of *Bush* v. *Steinman* is overruled in
*Milligan* v. *Wedge*, 12 Adolph. & Ell. 737, already referred
to.    The purchaser of a bullock employed a drover to take
the animal home for him.   The drover employed a boy who

drove the animal, and an injury occurred through the careless driving of the boy. Held, that the owner of the bullock was not liable. The drover had a distinct employment, and the boy was his servant. We say that in the case at bar, the business of a contractor or builder of railroads is a distinct employment, and that the injury complained of by the plaintiff was done by their servants. The case of *Bluttenberger* v. *Schuylkill Navigation Co.*, is thus stated in the marginal note : " The company entered into an agreement with A., B. and C., to deliver to them coal boats to be run by the latter, with their own captains, hands and horses, on the canal; and the latter to transport the coal of the company to Philadelphia, the company to pay them eighty-five cents per ton for the coal transported. While the agreement was subsisting, plaintiff's canal boat was run into by one of the boats so engaged in transporting coal. Held, that the company was not responsible to the plaintiff, in an action on the case for the negligence of those having the management of the coal boat." This was in the district court of the city and county of Philadelphia, 1839. See, also, *Winterbottom* v. *Wright*, 10 Mees. & W.

The distinction which has been attempted between cases where the subject of the labor is personal and where it is real property, is without foundation. 4 Taunt. 649.

*Chamberlain*, for the plaintiff.

This is an action of the case charging the defendants that in the construction of their railroad near a public highway, over which the plaintiff was passing, a blast from a rock threw a fragment of stone upon plaintiff's hand, whereby he lost the use of it, and he became maimed and mutilated for life, and that this was done by the carelessness, recklessness and unskilfulness of the defendants.

Another count charges the accident to the carelessness, &c., of the defendants by their servants.

The verdict establishes the fact that the accident was

caused by carelessness, &c., and that it was done by a blast from the railroad.

The defendants say that they are not liable because that section of the road from which the rock was thrown, was under a contract with Dillon & Wells, and that contract is made a part of the case.

The plaintiff contends that the corporation is liable on the principle of justice, of sound public policy, and upon principles of law, as established by adjudged cases.

The plaintiff was travelling along a public highway, as he had a lawful right to do, and while so travelling met with a most serious accident by the carelessness and want of proper precaution of the defendants in the construction of their works. It is no answer to say that the defendants are a corporation holding a charter by the laws of the State giving them authority to construct a railroad, and to take and use so much land of individuals as is adjudged necessary for that purpose, and that the State, in the exercise of the right of " *Eminent Domain,*" has taken these lands and leased them to the corporation. The State has not yet adjudged that there exists such an overruling necessity for railroads that the ordinary and accustomed channels of communication should be closed or impeded. Much less have they enacted that this right of " eminent domain" extends over the persons or property of citizens who are pursuing their lawful avocations. This would be an exercise of power which the legislature would be slow to make, and which the people would hardly tolerate. The legislature has therefore provided for the security of the public by the acts relating to railroad corporations, and by enactments for that purpose, for keeping highways and other communications open and passable.

The defendants may contend that it is very difficult or even impossible for them to construct their road without interfering with or endangering the public travel.

It may be difficult, but the duty of the defendants is to

see that this difficulty is overcome. It may be impossible. If so, the defendants are under no obligation to commence or proceed with their enterprise. It is an enterprise voluntarily commenced by them, and may be abandoned at their pleasure. Like all other associations requiring legislative sanction, a railroad corporation is procured at the instance and for the benefit of the stockholders, to be undertaken at their pleasure, and abandoned whenever their interest, in their opinion, would be subserved by such abandonment.

The defendants, therefore, can hardly escape from their liabilities, on the plea of public necessity, or on the ground of any special exemption under their charter, or any legislation on the subject.

But the defendants say that they are not liable, because that part of their road where the injury to the plaintiff occurred, was being built under a contract with Dillon & Wells.

It may be material (although I do not conceive it to be so,) to examine the contract.

That instrument is made a part of the case. The contractors agree to finish the road in a specified manner and in a specified time, which had expired some two months before the injury to the plaintiff. The contract, then, as a contract, was at an end, and the plaintiff and the public, even if they had known of the existence of the contract, might well suppose it was terminated. The contract expressly reserves that power to the defendants, if they chose to exercise it, and it reserves the right to change the grade, the line, the slope and width of the road, as well as the right to dismiss the hands, and to put new hands on the work, when deemed expedient. The contract also provides for such security to the defendants as they chose to take from the contractors, for any damage to the public in consequence of the prosecution of the work. And if the injury to the plaintiff was occasioned by the fault of their workmen, the defendants may have their remedy upon them. From the

terms of the contract, it is manifest that the work, from the beginning to the end, was under the supervision, direction, and control of the defendants. There is hardly a paragraph in the whole instrument that does not show this. The "engineer" may do this and desire that. He may change the location, dismiss the hands, employ other help, expedite the work, terminate the contract, and do almost any thing at his pleasure.

The finishing of the work by the contractors, and the payment made, after the action was brought, will hardly exempt the defendants, if they were liable before.

Is there any reason, then, on the ground of justice, why the corporation should be exempted from liability, and the plaintiff should seek his remedy, not against a known and responsible principal, for whose benefit and under whose control the work is done, but against the unknown and irresponsible agents who were employed by them.

To turn the plaintiff to this remedy would be a mere mockery of justice. The contractors are mostly unknown. The contracts are secret, and if both were known, such is the want of responsibility of some, at least, of these agents, that a resort to them by legal proceedings would be worse than useless.

We say, also, that the defendants are chargeable upon the case stated, upon the principles of law and adjudicated decisions. *Heine* v. *Nichols*, 1 Salk. 289; *Jones* v. *Hart*, 2 Salk. 441; *Stone* v. *Cartwright*, 6 T. R. 411; *Littledale* v. *Lonsdale*, 2 H. Black. 267, 299; *Matthews* v. *West London Waterworks*, 3 Camp. 404.

The case of *Bush* v. *Steinman*, 1 Bosanquet & Puller 40, is most decisive for the plaintiff. That decision had the concurrence of the whole court, and the unanimous opinion of the court was in favor of our position. This case, although commented upon in *Laugher* v. *Pointer*, 5 B. & C. 547, has not been overruled.

The case of *Lowell* v. *Boston and Lowell Railroad*, 23 Pick. 24, seems to me to be a case precisely in point.

The decision in *Bush* v. *Steinman* is referred to by most of the elementary writers as good law. 1 Black. 431, notes; 2 Kent's Com. 259, 260, who cites *Randleson* v. *Murray*, 8 Adolph. & Ell. 109.

We submit, then, that upon principles of common justice, of sound public policy and of law, the plaintiff is entitled to a judgment on the verdict.

GILCHRIST, C. J. The principle involved in this case is one of sufficient importance to require an investigation into the authorities upon the question now presented. In *Heine* v. *Nichols*, 1 Salk. 289, in a case for deceit, it was held that a merchant was answerable for the deceit of his factor abroad, because it was more reasonable that he that puts a trust and confidence in the deceiver should be a loser, than a stranger. In *Jones* v. *Hart*, 2 Salk. 441, the servants of A., with his cart, run against another cart, wherein was a pipe of sack, and spoiled the sack; held that an action would be against A.

These cases illustrate the general principle that, for the negligent conduct of a person's servant, the master is answerable in damages.

The question here is, whether the workmen employed upon the road, by whose negligence the accident happened, can be considered the servants of the corporation? Cases analogous to this have undergone considerable investigation, both in the courts of England and America, and principles have been settled which seem to comprehend the case before us. And the inquiry is, what is the principle upon which the defendants should be charged or discharged?

In *Stone* v. *Cartwright*, 6 T. R. 411, the action was case for so negligently working a coal mine that the plaintiff's buildings were undermined. The defendant had been appointed manager of the mine by the court of chancery, the

mine belonging to an infant ward of that court, and the defendant employed a bailiff, who superintended the work, and hired and dismissed the colliers at his pleasure, but the defendant took no personal concern in the business, and had given no directions as to the manner of working it. It was held that the action would not be against the defendant, but should have been brought either "against the hand committing the injury or against the owner, for whom the act was done," and the plaintiff was nonsuited.

Here, between the owner and the persons who did the injury, there were two intermediate agents, the defendant and the bailiff, and the case settles that the owner is answerable.

*Littledale* v. *Ld. Lonsdale*, 2 H. Black. 267, 299, was case for a similar injury, and held rightly brought against the owner of the coal mine.

We come now in the order of time to *Bush* v. *Steinman*, 1 B. & P. 404, which is a leading case upon this subject.

The defendant bought a house by the road side, but had never occupied it. He contracted with a surveyor to put it in repair. A carpenter, having a contract under the surveyor to do the whole business, employed a bricklayer under him, and he again contracted for a quantity of lime with a lime-burner, by whose servant the lime was laid in the road. The plaintiff brought case against the defendant, the owner, for injury sustained by himself, by being overturned in a chaise, by means of the lime.

Here, between the owner of the property and him who actually did the wrong, there were four intermediate agents.

Lord Ch. Jus. *Eyre* says that he found some difficulty in holding the defendant liable, because he was so far removed from the immediate author of the nuisance, and that he hesitated in carrying the responsibility beyond the immediate master of the person who committed the injury. But he concurs with his brethren that the action will lie, although he says that he finds great difficulty in stating with accuracy

the grounds on which it is to be supported. He, however, cites with approbation the cases of *Stone* v. *Cartwright* and *Littledale* v. *Ld. Lonsdale*, and states that in the latter case the defendant was liable, on the ground that the work, being carried on for his benefit and on his property, all the persons employed must have been considered as his agents; whether he worked the mine by agents, by servants, or by contractors, still it was his work. He concludes that the case cannot be distinguished from *Littledale* v. *Ld. Lonsdale*, and, consequently, is of opinion that the action lay. But he somewhat inconsistently goes on to say that he still feels some difficulty in stating the precise principle on which the action is to be supported.

Mr. Justice *Heath* founds his opinion on this single point, that all the sub-contracting parties were in the employ of the defendant.

Mr. Justice *Rooke* says that he who has work going on for his benefit, and on his own premises, must be civilly answerable for the acts of those whom he employs. The law intends that he has a control over all those persons who work on his own premises, and he shall not be allowed to discharge himself from that intendment, by any act or contract of his own. If the employer suffer by the acts of those with whom he has contracted, he must seek his remedy against them.

In *Laugher* v. *Pointer*, 5 B & C. 547, the question of the extent of the liability of the owner of property for the negligence of his servants, was much discussed. The owner of a carriage hired of a stable keeper a pair of horses to draw it for him a day, and the owner of the horses provided a driver, who had no wages from his master, but depended on receiving a gratuity from the persons whose carriages he drove, and the hirer gave him 5s. for his day's work. Through the negligence of the driver, an injury was done to the plaintiff's horse, and the plaintiff brought case against the owner of the carriage. There being a difference of opin-

ion upon the bench, the case was argued before all the twelves judges, except the lord chief baron. A nonsuit had been directed, and a rule *nisi* for a new trial was granted. But the judges of the king's bench were still divided equally, and the rule was discharged. Mr. Justice *Littledale* thought the action would not lie, because the driver could not be considered as the servant of the defendant, not being hired by the defendant, and receiving no wages from him, but only a gratuity, and not being subject to be dismissed by him. He held that the rule cannot be carried so far as to establish the doctrine that the only thing to be looked to is, whether, in the end, the principal pays for the employment in the course of which the injury is sustained. He criticises the doctrine of Mr. Justice *Heath*, in *Bush* v. *Steinman*, that if a person hires a coach upon a job, and a job coachman is sent with it, and does any injury, the hirer of the coach is answerable. He thinks that *Bush* v. *Steinman* does not rest upon the same basis as it would had it not been for the doubts expressed by the Lord Ch. Jus. *Eyre*. But without impugning the substantial correctness of. that decision any further, he admits that the rule of law may be, that in all cases where a man is in possession of fixed property, he must take care that his property is so used and managed that other persons are not injured, and that, whether his property be managed by his own immediate servants, or by contractors or their servants. The injuries upon land or buildings are in the nature of nuisances, for which the occupier ought to be chargeable, when occasioned by any acts of persons whom he brings upon the premises.

The Lord Ch. Jus. *Abbott* says that *Stone* v. *Cartwright*, *Littledale* v. *Lonsdale*, and *Bush* v. *Steinman* do not afford a rule by which the present case before him should be governed. " Whatever," he says, " is done for the working of my mine, or repair of my house, by persons mediately or immediately employed by me, may be considered as done

by me. I have the control and management of all that belongs to my land or my house, and it is my fault if I do not so exercise my authority as to prevent injury to another."

Mr. Justice *Holroyd*, one of the most eminent of modern English judges, says the responsibility is not confined to the immediate master of the person who committed the injury, and " that the action may be brought against the person from whom the authority flows to do the act, in the negligent execution of which the injury has arisen, is established in the case of *Bush* v. *Steinman*," and Mr. Justice *Bayley* agreed with him that the action was maintainable.

It is to be noticed that *Abbott*, C. J., and *Littledale*, J., did not deny the soundness of the judgment in *Bush* v. *Steinman*. They denied its applicability to the case then before them, and that was the extent of their criticism upon it, except the remarks of *Littledale*, J., upon the dictum of Mr. Justice *Heath*.

In the subsequent case of *Randleson* v. *Murray*, 8 Ad. & E. 109, the defendant, a warehouseman, employed a master porter to remove a barrel from his warehouse. The porter employed his own men and tackle, and through the negligence of his men, or rather through the insufficiency of the .tackle, the barrel fell and injured the plaintiff. It was held that the action was maintainable. Mr. Justice *Littledale* remarked that it made no difference whether the persons whose negligence occasioned the injury be servants of the defendant, paid by daily wages, or be brought to the warehouse by a person employed by the defendant, and that the law was the same in each case. See also *Harris* v. *Baker*, 4 M. & S. 27.

We have discussed this question at more length than might seem to be necessary, because it is an important one in itself, and increases in importance as roads of this description increase throughout the country. And it is desirable that their rights and liabilities, and those of individuals in relation to them, should be definitely settled, as soon

as may be. It appears that the case of *Bush* v. *Steinman* has sometimes been supposed to be questioned by subsequent decisions. In the case of *Randleson* v. *Murray*, the counsel for the defendant so alleges. But we have not been able to find any case where its soundness has been doubted upon the facts of the case. It is said in one of the most scientific of our professional treatises, Hammond on Parties 92, that the case settles, in effect, that the lime-burner might have sued the owner of the house, on the contract made by the latter with the carpenter, and that it is at variance with the decision of the court in *Bramah* v. *Ld. Abington*, 13 East 66. But this able writer implies no doubt of the decision.

*Milligan* v. *Wedge*, 12 Ad. & Ell. 737, which is cited by the counsel for the defendant, was an action on the case. The facts were, that the buyer of a bullock employed a licensed drover to drive it from Smithfield. By the by-laws of London, no one but a licensed drover could be so employed. The drover employed a boy to drive the bullock, together with others, the property of different persons, to the owner's slaughter-house. Mischief was occasioned by the bullock, through the careless driving of the boy. It was held that the owner was not liable for the injury, the boy not being in point of law his servant. Lord Chief Justice *Denman* said " the party sued has not done the act complained of, but has employed another who is recognized by the law as exercising a distinct calling. The butcher was not bound to drive the beast to the slaughter-house himself; he might not know how to drive it. He employs a drover, who employs a servant, who does the mischief. The drover, therefore, is liable, and not the owner of the beast. I may remark that one might perhaps be reconciled to the distinction between cases of fixed and of moveable property, by considering that to hold the owner of land or buildings liable to injury done in respect of that property, will enable the party injured to know more readily from whom he is to

seek redress. In *Randleson* v. *Murray*, the work was in effect done by the defendant himself, at his own warehouse; if he chose, instead of keeping a porter, to hire one by the day, he did not thereby cease to be liable for injury done by the porter, while under his control."

Mr. Justice *Williams* said, " the difficulty always is to say whose servant the person is that does the injury; when you decide that, the question is solved. To say that that party is liable from whom the act ultimately originates, is indeed a rule of great generality, and one which will solve the greater number of questions; but its applicability fails in one case. For where the person who does the injury exercises an independent employment, the party employing him is clearly not liable. I agree in the decision of *Randleson* v. *Murray*, for the warehouseman's servant, whether daily or weekly, is equally under the control of the warehouseman. And that is the way in which Mr. Justice *Story* puts this point; he brings it to the question, who employed the person that did the injury." Story on Agency, chap. 17, sec. 452, &c.

Now in this case, the soundness of the decision in *Bush* v. *Steinman* is not questioned, nor is there any inconsistency between the two cases. If the solution of the question depends upon ascertaining whose servant the person is that does the injury, there can be little doubt in the case before us. The railroad corporation made a contract with certain persons to construct a part of the railroad. The contractors were in the immediate employment of the defendants. It is entirely immaterial whether the contract were written or verbal. The contractors were none the less the servants of the defendants, that there was a written agreement between the parties, setting forth with precision what each party was to do. Nor is there in this case that " independent employment" exercised by the contractors, which is mentioned in the case of *Milligan* v. *Wedge*. The sole object of the corporation was to build a railroad. This

they might do either by employing laborers by the day, or by contracting with different persons to construct different sections of the road. The defendants employed the persons that did the injury, and we are not aware that to such a state of facts the case of *Bush* v. *Steinman*, and the other cases in accordance with it, have been held to be inapplicable, or their doctrine considered as unsound. In the case of *Duncan* v. *Findlater*, 6 Clark & Fin. 894, Lord Chancellor *Cottenham* and Lord *Brougham* both recognize the case of *Bush* v. *Steinman* as law.

In the case of *Allen* v. *Hayward*, 7 Ad. & Ell. N. S. 960, commissioners were appointed by an act of parliament for improving a navigation. They were not to be personally liable on contracts made, or for damages incurred in relation to any thing done in pursuance of the act, but might be sued in the name of their clerk. The contractor, in executing part of the work contracted for, made a drain which, from a defect in the materials, could not resist water, and without having any authority to do so, he turned in the water, which broke through and flooded the neighboring land. In an action on the case, against the commissioners, sued by the clerk, the declaration stated that they made the diversion and executed the work so negligently that, in consequence thereof, and from no other cause, the water broke through and flooded the plaintiff's land. It was held that on these facts the defendant was not liable. It was said by Lord *Denman*, in delivering the judgment of the court, that " if the commissioners constructed a weak and dangerous bank, they would be liable for the damage done by water improperly let in, whether by their servant or by a stranger, or by some natural accident. Supposing this to be true, we are then brought to the question whether the commissioners are responsible for this ill construction; whether the contractor is to be regarded as their servant, so that they may be called the makers of this work by his agency."

After referring to several cases on this subject, his Lord-

ship says, " It seems perfectly clear that in an ordinary case, the contractor to do works of this description is not to be considered as a servant, but a person carrying on an independent business, such as the commissioners were fully justified in employing to perform works which they could not execute for themselves, and who was known to all the world as performing them. We find here none of the reasons which have prevailed in cases where one person has been held liable for the acts of another, as his servant."

In the case before us, the corporation might have employed an agent to superintend the building of the road, and to hire and contract with workmen and to pay them on behalf of the corporation. Lord *Denman* says, in *Allen* v. *Hayward*, that the opinions delivered by Lord *Tenterden* and *Littledale*, J., in *Laugher* v. *Pointer*, 5 B. & C. 547, " must be taken to lay down the correct law." Now Mr. Justice *Littledale* says, in the course of his opinion, " If the owner of a farm has it in his own hand, and he does not personally interfere in the management, but appoints a bailiff, or a hirer who hires other persons under him, all of them being paid out of the funds of the owner, and selected by himself, or by a person specially deputed by him, if any damage happen by their default, the owner is answerable, because their neglect or default is his, as they are appointed by and through him." The case of *Allen* v. *Hayward* is put upon the ground that the contractor is to be regarded as a person carrying on an independent business. In the present case, if Dillon & Co. make a contract to build a certain section of the road, they are to be regarded as carrying on an independent business, it would seem. But suppose they had merely agreed to work upon the road for an indefinite period, is there any reason for holding the first contract to be an independent business, which would not equally apply to the second? It seems to us that the effect of making such a very subtle discrimination between the two cases, is merely to involve the question of the liability of the owner in

greater uncertainty than before, and that the distinction between the two cases is too subtle to be of practical use. It is difficult for us to perceive why, in each case, the contractors would not be equally the servants of the corporation, and the illustration quoted from Mr. Justice *Littledale* is, we think, pertinent to the case.

In *Quarman* v. *Burnett*, 6 M. & W. 499, 510, it is held that where a man is in possession of fixed property, he must take care that his property is so used and managed that other persons are not injured, and that 'whether his property be managed by his own immediate servants, or by contractors or their servants.

The case of *Lowell* v. *The Boston and Lowell Railroad,* 23 Pick. 24, is also in point. It was case for the negligence of the defendants, by leaving open a deep cut, into which the plaintiff drove in the night. The ground was taken that the defendants were not liable, because, at the time of the accident, that section of the road had been let out to one Noonan, who had contracted to make it for a stipulated sum, and who employed the workmen. But it was held that this circumstance did not relieve the defendants from responsibility, as the work was done for their benefit, under their authority, and by their direction. And it is said by Mr. Justice *Wilde,* that this question was very fully discussed and settled in the case of *Bush* v. *Steinman.*

It is the opinion of the court that there should be

*Judgment on the verdict.*